UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN APODACA,

      Plaintiff,

v.                          Case No. 22-12461

NEWREZ LLC,           Sean F. Cox
                              United States District Court Judge

      Defendant.

_____/

**OPINION & ORDER**

Plaintiff filed this putative class action against Defendant, his mortgage servicer, in state court, alleging that Defendant improperly bought and charged him for property insurance on his home. Plaintiff asserts the following claims: breach of contract, breach of the implied covenant of good faith and fair dealing, violation of Michigan's Consumer Protection Act, violation of Pennsylvania's Consumer Protection Act, and unjust enrichment. Defendant removed the matter to federal court, under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The matter is currently before the Court on Defendant's Motion to Dismiss, brought pursuant to Fed. P. Civ. P. 12(b)(6). The parties have briefed the issues and the Court heard oral argument on March 2, 2023.

For the reasons set forth below, the Court grants the motion in part and denies it in part. The Court grants the motion, to the extent that the Court dismisses Plaintiff's breach of implied covenant of good faith and fair dealing claim, his claim under Michigan's Consumer Protection Act, and his unjust enrichment claim, all with prejudice. The Court denies the motion in all other respects, which leaves Plaintiff's breach of contract claim (under Texas law) and his claim

1

under Pennsylvania's Consumer Protection Act to proceed in this case.

As the Court expressed at the hearing, given that Plaintiff is a Texas citizen and that Defendant is a Delaware LLC with its headquarters in Pennsylvania, it appears that the Court should transfer this case to the United State District Court for the Eastern District of Pennsylvania. But the Court will give the parties the opportunity to be heard on that issue before doing so.

## BACKGROUND

### A.    Procedural History

Plaintiff Bryan Apodaca filed this putative class action in Oakland County Circuit Court, asserting the following claims against Defendant Newrez LLC d/b/a Shellpoint Mortgage Servicing d/b/a Newrez Mortgage ("Defendant" or "Newrez"): 1) Breach of Contract (Count I); 2) Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II); 3) Violation of the Michigan Consumer Protection Act (Count III); 4) Violation of the Pennsylvania Consumer Protection Act (Count IV); and 5) "Money Had and Received / Unjust Enrichment (Restitution)" (Count V). Defendant removed the matter to federal court on October 13, 2022, under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

On November 14, 2022, Defendant filed a Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). Defendant attached, as exhibits to its motion, notices that it claims it sent to Plaintiff, including one referenced in the Complaint.

After Defendant filed its motion, this Court issued its standard order, giving Plaintiff the option of either filing an amended complaint (in order to cure any pleading deficiencies) or filing a response to the motion. (*See* ECF No. 7). Plaintiff chose to file a brief in opposition to the

2

motion.  The parties have briefed the issues and the Court heard oral argument on March 2, 2023.

**B.     Standard Of Decision**

Defendant filed its Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

"To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct.  *Id.*  When assessing the sufficiency of a plaintiff's claim, this Court must accept the complaint's factual allegations as true.  *Ziegler v. IBP Hog Mkt., Inc*., 249 F.3d 509, 512 (6th Cir. 2001).  "Mere conclusions," however, "are not entitled to the assumption of truth.  While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."  *Iqbal,* 556 U.S. at 664, 129 S.Ct. 1937.

When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).*" Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  Thus, in reviewing the pending motion, this Court may consider the Deed of Trust that Plaintiff attached as Exhibit A to his Complaint and Defendant's letter that is referenced in

the Complaint.

## C.    Relevant Allegations in Plaintiff's Complaint

Plaintiff's Complaint includes the following "Introduction" section, that provides an

overview of his claims in this case:

1.    This is a class action filed to redress injuries that Plaintiff and a class of consumers have suffered and will continue to suffer as a result of the practices of Defendant relating to forceplaced insurance policies. Plaintiff and the Class allege that Defendant derives improper financial benefits from imposing force-placed hazard insurance policies on properties, injuring Plaintiff and the class. In addition, Defendant is charging residential borrowers for the "cost" of procuring forceplaced insurance, but a portion of such "cost" is returned, transferred, kicked-back or otherwise paid to Newrez and/or its related entities. Newrez and/or its related entities do no meaningful work for the sums received, and therefore the payments forwarded to them amount to an unearned kickback designed to encourage the referral of business to third-party insurers at extraordinarily high prices, to the detriment of Plaintiff and the Class. While Newrez has discretion in selecting a third-party insurance company to place insurance with, if and when authorized by contract, it abuses that discretion and self-deals to the detriment of Plaintiff and the Class by selecting the insurance company that provides Newrez the greatest benefits, opposed to the most favorable terms and lowest prices for the benefit of Plaintiff and the Class.

. . . .

2.    Mortgage lenders require borrowers to purchase and maintain hazard insurance coverage on the secured property as a condition of funding home loans. . . Plaintiff was required to obtain and maintain hazard insurance as a term of his mortgage.

3.    In the event that borrowers, including Plaintiff, are unable to maintain their hazard insurance policies, Defendant has the ability and discretion to purchase alternative insurance to protect its interest. . .  In doing so, however, it is not permitted to self-deal and try to extract additional financial benefits for its benefit to the detriment of Plaintiff and the Class: The discretion allowed must be exercised in good faith and in an attempt to treat borrowers fairly, in good faith and not to self-deal. Defendant, however, fails to do this and in the event of a lapse replaces borrowers' policies with considerably more expensive policies provided by National

4

Fire & Marine Ins. Co. ("National Fire") and/or other third-party insurers (collectively "Insurers") pursuant to a contract between Defendant and the third-parry insurer, forcing borrowers to pay for the policies by diverting their monthly mortgage payments and/or debiting the borrowers' escrow accounts. These policies are known as "force-placed" or "lender-placed" insurance policies. . . Such policies provide less coverage and are substantially more costly (two to ten times the price) than the borrowers' original policies, and provide improper, undisclosed, and lucrative financial benefits and kickbacks to lenders/servicers and/or their affiliates, as well as to providers of force-placed insurance.

4.      Here, Defendant has engaged in a pattern of unlawful and unconscionable profiteering and self-dealing in regard to its purchase and placement of force-placed insurance policies in bad faith. . .  In this action, Plaintiff challenges Newrez's practice of purchasing force-placed hazard insurance from third-parry insurers, such as National Fire pursuant to agreements to obtain a commission or kickback, resulting in unauthorized, unjustified, and unfairly inflated costs to the borrower for force-placed insurance in violation of law. . .

5.      In this action, Plaintiff challenges Newrez's practice of purchasing force-placed hazard insurance from third-parry insurers, such as National Fire pursuant to agreements to obtain a commission or kickback, resulting in unauthorized, unjustified, and unfairly inflated costs to the borrower for force-placed insurance in violation of law. . .

6.      . . . Defendant has engaged in unlawful, abusive, and unfair practices with respect to force-placed insurance by receiving kickbacks in the form of purported fees, payments, commissions, "rebates" and/or other things of value from providers of force-placed insurance.

7.      *Upon information and belief, Newrez entered into agreements with Insurers, pursuant to which Newrez and/or its subsidiaries or affiliates typically receive a portion of the premiums for each force-placed insurance policy purchased for a borrower.* Moreover, upon information and belief, those arrangements are exclusive. *Further the agreements and their terms with regard to the specific amount or percentage of the rebates are not disclosed to borrowers, like Plaintiff.*

8.      Upon information and belief, Defendant has received substantial kickbacks and rebates from FPI policies imposed on class members during the class period. Upon information and belief a substantial portion and majority percentage of each premium charged to borrowers like Plaintiff for FPI polices are secretly rebated to Defendant.

5

9.  In bringing this class action, Plaintiff . . . challenges the manner in which Defendant selected Insurers and its force-placed insurance products over alternatives for self-gain; the manipulation of the force-placed insurance process by Defendant; and the impermissible and unconscionable kickbacks that were included in the premiums that were added to the balance of Plaintiff's and Class members' mortgage loans. Plaintiff . . . complains that Newrez acted unlawfully and in bad faith and motive when it selected the particular insurance company and its particular rates and coverage, when other, more suitable, lower priced options were available. Even assuming it was proper to force-place Plaintiff with insurance (it was not), had Defendant used its discretion fairly and in good faith to select a lower-priced insurance option, Plaintiff would have been charged less money. Further, Defendant could have funded the premium on Plaintiff's then-existing policy at the same rate, saving Plaintiff money and Defendant administrative effort.

10.  Thus, while Plaintiff does not challenge Newrez's ability to force-place insurance policies and to charge fees/premiums for the same when appropriate (here it was not), Plaintiff does challenge the manner in which Defendant manipulated the force-placed insurance process for its own financial gain, with bad motive, and to self-deal, in breach of Newrez's contractual duties and in violation of statutory and common law.

11.  At issue in this case is whether Defendant has been unjustly enriched by manipulating the force-placed insurance process so as to self-deal and obtain unearned kickbacks, and breached the express and/or implied terms of the mortgage contract (including the implied covenant of good faith and fair dealing) by unreasonably, unconscionably and unlawfully exercising their contractual discretion to manipulate the force-placed insurance process so as to obtain financial benefits for themselves at Plaintiff and the Class's expense and, in turn, misrepresenting the true cost of insurance charged to Class members and overcharging them beyond charges permitted by the contract. In this action, Plaintiff challenges Defendant's unlawful conduct and seeks for himself and the Class compensatory damages, restitution for Defendant's unjust enrichment, declaratory, injunctive and other equitable relief.

(Compl. at 2-6) (italics added for emphasis).

Defendant Newrez is a Delaware limited liability company that is headquartered in Plymouth Meeting, Pennsylvania. (Compl. at ¶ 13). Plaintiff Bryan Apodaca is a resident and citizen of Texas. (Compl. at ¶ 12).

6

In 2021, Plaintiff refinanced a mortgage on a single-family home in Cypress, Texas. (Compl. at ¶ 68).  "Plaintiff executed a written thirty-year mortgage with Intercontinental Capital Group, Inc., a direct lender, on February 22, 2021, in the amount of $392,911.00. (the 'Mortgage Agreement')."  (*Id*. at 69).

Plaintiff's Mortgage Agreement includes "a provision that required him to secure and pay for adequate property insurance that protected the Property against loss by fire and other hazards. *See* Deed of Trust, ¶ 5."  (Compl. at ¶ 70).  Plaintiff attached a copy of the Deed of Trust to the Complaint.   Paragraph 5 of the Deed of Trust is titled "Property Insurance."  That paragraph provides, in pertinent part that:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.
> This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.
> . . . .
> *If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.*  Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of insurance so obtained might significantly exceed the cost of insurance that Borrower could have obtained.
> . . . .
> Lender shall have the right to hold the policies and renewal certificates*.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.*

(Deed of Trust, Paragraph 5) (emphasis added).

At the time of the Mortgage Agreement, Plaintiff selected and designated Progressive Insurance as the insurance carrier for the home insurance on the property, with a monthly

7

premium of $81.75, for a total annual premium of $981.  (Compl. at ¶ 74).

"The closing documents on the loan Plaintiff obtained on February 22, 2021 show that Plaintiff secured a hazard/property policy through Progressive Insurance (Policy No. TXW041242) carrying a policy premium of $981 identifying Intercontinental Capital Group Inc. ('Intercontinental'), as the Mortgagee for Loan #2101347154." (Compl. at ¶ 72).   Plaintiff alleges that is confirmed by the documents in the closing file, including the Progressive Homeowner's Declaration Page in the closing file, and that the "insurance policy arranged was to auto-renew after the policy period and because of that Plaintiff and Intercontinental arranged for Plaintiff to pay sufficient funds on a monthly basis to the escrow account throughout the loan term in order to fund any future insurance premiums and to ensure requisite insurance coverage existed at all times without any lapse." (Compl. at ¶ 72).

Effective on or about March 26, 2021, Intercontinental "assigned, sold, or transferred all interest in Plaintiff's mortgage, including the loan servicing," to Defendant Newrez.  (Compl. at ¶ 75).  On that same date, Plaintiff was informed by Intercontinental that his mortgage had been sold to Newrez and the "Transfer of Mortgage" letter confirmed that the loan would continue to be escrowed.  (Compl. at ¶ 77).  Thereafter, Plaintiff "received a status report from Defendant Newrez," indicating it "had received the closing statement.  The closing statement showed proof of insurance and collection of at least 12 months of insurance premiums."  (Compl. at ¶ 78).

Plaintiff alleges that he made all required payments to Newrez, including "the required amount towards his monthly escrow payment for insurance."  (*Id*. at ¶ 114).

"On or around April 2022, Plaintiff checked the Newrez mobile application and saw that his mortgage payments had increased significantly and further learned that this was due to"

the cost of a "force-placed insurance policy. Plaintiff immediately called Newrez to report this

problem and register a dispute." (Compl. at ¶ 79)

During Plaintiff's call with Newrez in or around April 2022, Defendant stated it sent him

a letter on July 19, 2021. Defendant immediately sent him an additional copy of this letter dated,

July 19, 2021." (Compl. at ¶ 80).

Defendant has produced the July 19, 2021 letter and its attachments as Exhibit 2 to its

brief. (*See* ECF No. 6-2 at PageID.253). The letter states, in pertinent part:

> We have not received proof of hazard coverage on the above referenced property
> as required under the terms of your mortgage *and as requested in our previous
> notices*. Because of this, **it has become necessary to place lender-placed
> insurance coverage on your property.**
>
> *This policy provides limited coverage and is not comparable to a standard hazard
> policy. The policy does not provide coverage for personal property or owner's
> liability to protect your interest*. **We strongly recommend that you obtain an
> insurance policy of your choice as soon as possible.**
>
> The premium will be charged to your escrow account. If you do not have an
> escrow account, one will be set up for you. Your monthly payments will be
> adjusted to cover this cost. This policy may be cancelled at any time by giving us
> proof of other acceptable insurance.
>
> If you obtain insurance of your own choosing at any time, please provide us with
> a copy. Once we receive and review your policy, we will cancel the insurance
> that we purchased and credit any unearned premium to your escrow account.

(*Id*. at PageID.253) (bolding in original, italics added for emphasis).

The letter dated July 19, 2021 from Defendant was accompanied by a document entitled

"Lender-Placed Insurance Evidence of Hazard Insurance" which bore an effective date of May

23, 2021 to May 23, 2022 with an annual premium of $4,450.44. (*Id*. at PageID.257; *see also*

Compl. at ¶ 82). The copy of this document that Defendant filed as its Exhibit A has the

"Master Policy No." and the "Policy Tracking ID" blacked out. It states that the "master

9

policy(ies) has been issued by National Fire & Marine Inc. Co." (*Id.*).[1]

Plaintiff alleges that "Defendant claimed to have sent Plaintiff this letter on or around July 19, 2021, however Plaintiff does not recall ever receiving the letter at that time.  Plaintiff immediately searched his received mail and the inbox of his e-mail and was unable to find any record the letter was sent to him as Defendant claimed."  (Compl. at ¶ 80).

Plaintiff's complaint does not include any factual allegations about whether or not he received notices from Defendant prior to July 19, 2021, wherein they requested insurance coverage information.

Defendant has provided the Court with two notices that it claims to have sent to Plaintiff on June 1, 2021, and July 1, 2021.  (Def.'s Ex. 2).  The June 1, 2021, July 1, 2021, and July 19, 2021 letters from Defendant all have the same subject line, in bold: "Please provide insurance information for:" the listed property address.

The June 1, 2021 letter stated, in pertinent part: "Our records show that your hazard insurance expired and we do not have evidence that you have obtained new coverage.  **Because hazard insurance is required on your property, we plan to buy insurance for your property.**  You must pay us for any period during which the insurance we buy is in effect but you do not have insurance.  You should immediately provide us with your insurance information."  (ECF No. 6-2 at PageID.237) (bolding in original).  The letter also stated, in bold that "[t]he insurance we buy: "May be significantly more expensive than the insurance you can buy yourself," and "May not provide as much coverage as an insurance policy you buy

---

[1]Plaintiff's brief states that Plaintiff has requested a copy of the contract between Defendant and National Fire but it has not been produced.  (Pl.'s Br. at 6).

yourself."  (*Id.*).

The July 1, 2021 letter stated, in pertinent part: "This is your second and final notice that our records show that your hazard insurance has expired and we do not have evidence that you have obtained coverage.  Because hazard insurance is required on your property, we plan to buy insurance for your property."  (*Id.* at PageID.245).  That letter also stated, in bold, that "[t]he insurance we buy: "Will cost an estimated $4,450.44 annually, which may be significantly more expensive than the insurance you can buy yourself."  (*Id.*).

Plaintiff alleges that the forced placement of any insurance by Defendant in July 2021 was improper as sufficient funds were collected at the time of closing and placed in Plaintiff's escrow account controlled by Defendant to fund the insurance policy, per the lender's instructions and direction.  (Compl. at ¶ 84).  That is, Plaintiff alleges that because he prepaid for a full year of homeowner's insurance at closing, there was no need for *any* force-placed insurance policy at all.

Plaintiff further alleges that "[t]here was no valid reason for Defendant to backdate the policy placed on July 19, 2021 to May 23, 2021. Backdating the policy increased the premium on the force-placed policy charged, to Plaintiff's detriment and Defendant's further unjust enrichment." (Compl. at ¶ 83).

Plaintiff alleges that, upon review of the July 19, 2021 letter that Defendant provided him in April of 2022, he advised Defendant that he had paid for homeowners insurance at closing and through his escrow deposits that any force-placed insurance "was unnecessary and improper." (Compl. at ¶ 86).  Plaintiff further alleges that Defendant already had Plaintiff's documents, "including his closing statement, showing that he adequately funded the insurance premium at

11

the February 2021 closing." (Compl. at ¶ 86)

Plaintiff further alleges:

87.   Defendant cannot charge a borrower like Plaintiff for force-placed insurance unless it has good reason to believe that the borrower is not complying with the requirement in their mortgage agreement to keep their property fully insured. Defendant did not have good reason to believe that Plaintiff was not complying with the requirement in his mortgage agreement to keep his property fully insured.

88.   The charge imposed and paid by Plaintiff included amounts that were not true costs of insurance as permitted by the contract, specifically the amount of any rebate, kickback, commission or other thing of value provided, directly or indirectly, to Newrez.

89.   There was no valid basis or authorization for the force-placement of this policy as Plaintiff did not fail to play the required amounts for insurance and funded the policy at the time of the loan closing months earlier. Based on this, the policy was not placed, charged, or paid by Plaintiff in any voluntary manner. Plaintiff never voluntarily paid any premium for any forceplaced policy.

90.   Plaintiff paid for the premiums through his escrow account, which was drained as a result of the force-placed policy premiums.

91.   Plaintiff has timely protested, demanded a refund of the premiums that were improperly charged and collected, and provided proof that his homeowner's policy was current, but as of time of filing no refund has been processed or received by Plaintiff.

92.   Upon information and belief, Defendant Newrez received a substantial kickback or commission from Insurer National Fire as a percentage of the premium for the force-placed policy.

93.   Based on the foregoing, Plaintiff was forced to retain counsel and file this class action lawsuit seeking monetary, declaratory, and injunctive relief for the defined Class. As Plaintiff still owns his home in Texas, Plaintiff remains subject to Defendant's unlawful practices, described and challenged herein, in the future. Further, Defendant's unlawful conduct is capable of repetition evading review if this matter does not go forward.

94.   As of this filing, Plaintiff has not received any "refund" or payment from any Defendant by check, cash, electronic transfer, bank wire, or any other

means.

(Compl. at 87-94).

## ANALYSIS

Plaintiff Apodaca is the only named Plaintiff in this putative class action.  At this juncture, no motion for class certification has been filed.  The matter is before the Court on Defendant Newrez's Motion to Dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6).

I.     **The Court Need Not Consider Two Of Defendant's Withdrawn Challenges To Plaintiff's Claims.**

On Page 15 of Defendant's Motion, it asserts that one or more of Plaintiff's claims fail due to Plaintiff's failure to comply with some conditions precedent.  In its Reply Brief, however, Defendant withdraws that argument.  (Def.'s Reply Br. at 2 n.1).  The same is true for Defendant's challenge to Plaintiff's claim under Pennsylvania's Consumer Protection Act as being barred by the economic loss doctrine.   (Def.'s Reply Br. at 2 n.1).  As such, the Court need not address either of those withdrawn challenges.

II.    **The Court Denies Defendant's Motion To Dismiss With Respect To Plaintiff's Breach Of Contract Claim.**

The Deed of Trust states that "the law of the jurisdiction in which the Property is located" governs.  (ECF No. 1 at PageID.61).  The property secured by the Mortgage Agreement is located in Texas.  Thus, both parties agree that Texas law govern's Plaintiff's breach of contract claim.

"Under Texas law, a plaintiff alleging a breach of contract must show: 1) a valid contract; 2) performance by the plaintiff as contractually required; 3) breach of the contract by the defendant; and 4) damages to the plaintiff resulting from that breach.  *Harrison Company, L.L.C.*

13

*v. A-Z Wholesalers, Inc.*, 44 F.4th 342, 346 (2022).  *Villarreal v. Wells Fargo Bank, N.A.*, 814

F.3d 763 ,767 (5th Cir. 2016).

Here, neither party disputes that there is a valid and enforceable contract between the

parties.   Notably, the only element that Defendant challenges in its motion and opening brief is

whether Plaintiff has sufficiently alleged *that Defendant breached the contract*.  (*See* Def.'s Br.

at 16-18).

Plaintiff asserts a single breach-of-contract count wherein it alleges that Defendant

breached the contract in numerous ways, including by: 1) obtaining forced-placed coverage for

Plaintiff at all, because Plaintiff prepaid for a year worth of insurance and Defendant had actual

notice of that because it was provided with the closing paperwork that showed that; 2)

purchasing insurance coverage for a time period before Defendant ever requested proof of

coverage from Plaintiff; and 3) purchasing insurance coverage for Plaintiff that exceeded the true

cost of insurance and amounts that were actually disbursed and paid the insurer ("the Kickback

Theory").  In order for Plaintiff's breach-of-contract count to survive the motion to dismiss, the

Court need only find that Plaintiff has plausibly alleged some breach of the contract by

Defendant.

The Court concludes that he has.  Even if the Court assumes *arguendo* that Defendant

sent Plaintiff the letters requesting proof of insurance coverage and Plaintiff failed to respond to

them, Plaintiff asserts that Defendant still breached the contract by obtaining an insurance policy

that began on May 23, 2021 – a date prior to Defendant's first alleged request for proof of

insurance – and approximately two months before Defendant obtained coverage.  (*See* Compl. at

¶ 83) (There "was no valid reason for Defendant to backdate the policy placed on July 19, 2021

14

to May 23, 2021. Backdating the policy increased the premium on the force-placed policy

charged, to Plaintiff's detriment . . .").

What Defendant appears most concerned about is whether Plaintiff has plausibly alleged

that it breached the contract by virtue of the kickback-theory allegations.  But the Court need not

reach that issue in connection with the challenge to Plaintiff's breach of contract count.  So long

as Plaintiff has plausibly alleged at least one  kind of breach of the contract by Defendant,

Plaintiff Apodaca's breach of contract claim is not subject to dismissal.   In other words, the

Court does not consider, on a breach-by-breach basis, whether Plaintiff's various allegations in

support of its breach of contract count are plausible.  *See, eg., In re Pressure Sensitive

Labelstock Antitrust Litig*., 566 F.Supp.2d 363, 373 (M.D. Penn. 2008) (Explaining that

"[n]othing in *Twombly*" contemplates a "'dismemberment approach to assessing the sufficiency

of a complaint.  Rather, a district court must consider a complaint in its entirety without isolating

each allegation for individualized review."); *AKB Wireless, Inc. v. Wireless Toyz Franchise,

LLC,* 2015 WL 1637593 at *7 (E.D. Mich. 2015) (Wherein this Court declined to take a

dismemberment approach to a breach of contract claim in the context of a motion to dismiss).

## II.    The Court Dismisses Plaintiff's Breach Of Implied Covenant of Good Faith And Fair Dealing Claim.

Plaintiff's Complaint includes a claim for "Breach of the Implied Covenant of Good

Faith and Fair Dealing."  (Compl. at 34).  In that count, Plaintiff alleges that the "implied

covenant of good faith and fair dealing is implied in and made part of all contracts, including any

contracts between Plaintiff and Class members and Newrez."  (Compl. at ¶ 122).  Plaintiff does

15

not appear to allege in the Complaint that he can pursue a claim for breach of the duty of good faith and fair dealing based upon the existence of a "special relationship."

Defendant's motion seeks dismissal of this claim.  In response, Plaintiff contends that he can establish a claim for breach of implied covenant of good faith and fair dealing under Texas law.

"A claim for breach of duty of good faith and fair dealing is tort action that arises from an underlying contract." *Cole v. Hall*, 864 S.W.2d 563, 568 (Tex. App. 1993).  The Supreme Court of Texas has "consistently held" that "a duty of good faith is not imposed in every contract but only in special relationships marked by shared trust or an imbalance in bargaining power." *Federal Dep. Ins. Corp. v. Coleman,* 795 S.W.2d 706, 709 (Tex. 1990).  Thus, Plaintiff must establish that a "special relationship" exists between himself and Defendant.

"Under Texas law, this requisite special relationship and the circumstances which give rise to a duty of good faith and fair dealing are very limited."  *White v. Mellon Mortg. Co.*, 995 S.W.2d 795, 800 (Tex. App. 1999).

"Texas courts have carved out exceptions for certain special relationships,' such as those between insurers and insureds, principal and agent, joint venturers, and partners." *Cole*, 864 S.W.2d at 568.  Notably, "[t]he relationship of mortgagor and mortgagee ordinarily *does not* involve a duty of good faith."  *Federal Dep. Ins. Corp. v. Coleman,* 795 S.W.2d 706, 709 (Tex. 1990) (emphasis added); *see also Smith v. JPMorgan Chase Bank, N.A.*, 699 F. App'x 393, 395 (5th Cir. 2017) ("Under Texas law, a duty of good faith is implied only in contracts involving a special relationship marked by shared trust or an imbalance in bargaining power, which ordinarily does not include a mortgagor and mortgagee relationship."); *Hernanez v. Servis One,*

*Inc.*, 2017 WL 9250311 at *3 (E.D. Tex. 2017) ("Texas courts have universally held that no such 'special relationship (necessary to create a common law duty to act in good faith) exists between a mortgagor and mortgagee.") (collecting cases).

Absent such a "special relationship," any duty to act in good faith is "contractual in nature" and its breach does not amount to an independent tort. *Cole,* 864 S.W.2d at 568.

In response to Defendant's motion, Plaintiff argues that the requisite special relationship exists here, under Texas law, for three reasons. (Pl.'s Br. at 12). Plaintiff has not, however, directed the Court to on-point authority to support his assertion that a special relationship exists, so as to allow him to proceed with an independent claim for breach of the duty of good faith and fair dealing, by virtue of these reasons.

First, Plaintiff asserts that a special relationship exists by virtue of Defendant serving as an escrow agent over the funds deposited into the escrow account. But Texas courts have held that the "payment of funds by the mortgagor into an 'escrow' account for the mortgagee's use to meet tax and insurance obligations upon the property as they accrue does not create a trust or fiduciary relationship." *Central Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*, 848 S.W.2d 232, 243 (Tex. App. 1992) (citing *Wesson v. Jefferson Sav. & Loan Ass'n,* 641 S.W.2d 903, 905 n.2 (Tex. 1982)).

Second, Plaintiff seems to assert that the requisite "special relationship" exists, such as to allow him to bring a separate claim for breach of the implied covenant of good faith and fair dealing, by virtue of contractual provisions. The breach of a contractual provision is a breach of contract. Absent a requisite special relationship, any duty to act in good faith is "contractual in nature" and its breach does not amount to an independent tort. *Cole,* 864 S.W.2d at 568.

17

Third, Plaintiff asserts that Texas has found a special relationship to exist in the "insurance context." (Pl.'s Br. at 13).  It is true that "Texas courts have carved out exceptions for certain special relationships,' such as those *between insurers and insureds*." *Cole*, 864 S.W.2d at 568 (emphasis added). But such a relationship does not exist here because Defendant is not the insurer.  Rather, Defendant procured a lender-placed insurance policy, with an insurer, on Plaintiff's property for its own benefit.  "A lender-placed insurance policy on a mortgage does not create a 'special relationship' between a lender and a borrower." *Faili v. BAC Home Loans Servicing LP*, 2014 WL 255704 at *9 (C.D. Calf. 2014) (citing *Garcia v. Bank of Am. Corp.*, 375 S.W.2d 322, 332-33 (Tex. App. 2012)).

Thus, the Court dismisses Plaintiff's breach of implied covenant of good faith and fair dealing claim with prejudice.

## III.     The Court Dismisses Plaintiff's MCPA Claim With Prejudice.

Plaintiff's Complaint asserts a claim under the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq*.  Defendant challenges this count, claiming it should be dismissed for failing to plead the claim with the requisite particularity.  It also contends that the claim fails because the MCPA is inapplicable because it does not apply to transactions or conduct "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States" under Mich. Comp. Laws § 445.904(1)(a).

As Defendant notes in its brief, District courts in the Sixth Circuit have held that Fed. R. Civ. P. 9(b)'s heightened pleading requirements apply to MCPA claims that allege fraudulent and deceptive conduct.  *See, e.g., Home Owners Ins. Co. v. ADT LLC*, 109 F. Supp.3d 1000, 1008 (E.D. Mich. 2015); *In re Packaged Ice*, 779 F.Supp.2d 642, 666 (E.D. Mich. 2011); *State*

18

*Farm Mut. Ins. Co. v. Max Rehab Phys. Therapy,* 2019 WL 6481719 at *5 (E.D. Mich. 2019).

"The Sixth Circuit reads Rule 9(b) liberally, requiring a plaintiff, at a minimum, to 'allege the

time, place, and content of the alleged misrepresentation on which he or she relied; the

fraudulent scheme; the fraudulent intent; and the injury resulting from the fraud.' *See Coffey v.*

*Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993)." *Home Owners Ins. Co.*, 109 F.Supp.3d at

1008.

Here, Plaintiff alleges that Defendant violated various provisions of the MCPA by virtue

of their conduct in obtaining forced-placed insurance coverage for him and by virtue of

"representations" made to Plaintiff about such insurance coverage.  For example, Plaintiff

alleges that Defendant violated the MCPA by "representing" to Plaintiff "that the cost passed on

to borrowers would be the 'cost of insurance' when in fact the cost passed on included a secret

kickback to Defendant which greatly inflated the overall cost of the policy."  (Compl. at ¶ 147).

But the Complaint does not include any factual allegations regarding representations having been

made by Defendant, other than the stated terms of the Deed of Trust.  That is, Plaintiff includes

no factual allegations regarding other representations having been made to him by Defendant's

representatives, in verbal or written communications.  As such, the claim is based upon the Deed

of Trust.

By its terms, the MCPA does not apply to a "transaction or conduct specifically

authorized under laws administered by a regulatory board or officer acting under statutory

authority of this state or the United States."  Mich. Comp. Laws § 445.904(a); *see also*

*Lauderdale v. Wells Fargo Home Mortg.*, 552 F. App'x 566, 573 (6th Cir. 2014).

Defendant persuasively argues that the MCPA does not apply here because Plaintiff

"brings claims arising out of terms of the deed of trust" and mortgage servicing, which are transactions subject to federal regulation. "Courts have consistently applied the MCPA exemption to the mortgage loan transactions of regulated lending institutions." *Soto v. W Wells Fargo Bank, N.A.*, 2012 WL 113534 at * (E.D. Mich. 2012) (collecting cases).

The Court dismisses Plaintiff's claim under the MCPA with prejudice.

## IV. The Court Denies Defendant's Motion To Dismiss With Respect To Plaintiff's Pennsylvania UTPCPL Claim.

Plaintiff's Complaint includes, as an alternative to his MCPA claim, a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").

Section 201-2 sets forth a litany of specifically-described actions that constitute "unfair or deceptive acts or practices" under the UTPCPL. It also includes a "catch-all" provision of "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." Section 201-2(4)(xxi).

A "plaintiff may succeed under the catch-all provision by satisfying the elements of common-law fraud or by otherwise alleging deceptive conduct." *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F.Supp.2d 503, 510 (E.D.Pa. 2010). Because a plaintiff is not required to plead fraud under the UTPCPL, a plaintiff alleging deceptive conduct is not required to satisfy the particularity requirements of Fed. R. Civ. P. 9(b). *Id.; see also Schnell v. Bank of New York Mellon*, 828 F.Supp.2d 798, 807 (E.D.Pa. 2011). "Yet even under the less stringent standard, 'a plaintiff must allege facts showing a 'deceptive act,' that is 'conduct that is likely to deceive a consumer acting reasonably under the circumstances.'" *Schnell, supra* (quoting *Seldon v. Home Loan Servs., Inc.*, 647 F.Supp.2d 451, 469-70 (E.D. Pa. 2009)).

Here, Defendant contends that Plaintiff has failed to sufficiently allege a deceptive act or

unfair practice.[2]  In support of its argument, Defendant asserts:

> Shellpoint simply did not act unfairly or deceptively in charging Mr.
> Apodaca for the cost of the LPI policy it purchased to protect its interest in the
> property following Mr. Apodaca's breach. Shellpoint repeatedly warned Mr.
> Apodaca it was acting in its own interest, the insurance it was purchasing would
> not protect Mr. Apodaca, and the cost of the insurance would be greater than the
> cost of a policy Mr. Apodaca could obtain on his own. Shellpoint urged Mr.
> Apodaca to obtain and provide proof of his own insurance. (*See* Compl ¶¶ 80-82.)
>
> There was nothing deceptive or misleading about Shellpoint's actions. See,
> *e.g., Cohen*, 735 F.3d at 608-09 (loan agreement and   disclosures defeated claims
> of fraud). "[A]llegations that [lender] violated its fiduciary duty and committed
> fraud by charging . . . any amount above the net cost to [lender] of obtaining the
> [LPI] also fails . . . because [lender] disclosed that [borrower] would incur higher
> costs if it force-placed the insurance for her. [S]imply calling a commission a
> kickback doesn't make it one. The defining characteristic of a kickback is divided
> loyalties. But the lender was not acting on behalf of the borrower or representing
> her interests. The loan agreement makes it clear that the insurance requirement is
> for the lender's protection." *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098,
> 1110-11 (11th Cir. 2014) (internal quotations omitted).

(Def.'s Br. at 21).  Defendant further asserts that Plaintiff's "kick-back" allegations are

implausible because Plaintiff has made various allegations upon "information and belief."

In response, Plaintiff maintains that he has sufficiently alleged deceptive conduct,

explaining:

> Plaintiff alleges, *inter alia*, that 1) "Defendant has engaged in a pattern of
> unlawful and unconscionable profiteering and self-dealing in regard to its
> purchase and placement of forced-placed insurance in bad faith," (Compl. ¶ 4), 2)
> Defendant's kick-back scheme and the insurance product was not the result of a
> competitive process (*id.* at ¶¶ 1, 41, 43, 48), and 3) Defendant failed to disclose
> the source of the forced-placed policies and of its undue commissions or kick-
> back. (*Id.* at ¶¶ 3, 7, 20, 21).

(Pl.'s Br. at 22-23).  Thus, the alleged violations are based upon, among other things, Plaintiff's

allegation that Defendant is receiving secret "kickbacks" on forced-placed insurance policies.

---

[2]There are other requirements in order to a state a claim, such as justifiable reliance, but
Defendant has not challenged them in the pending motion.

Plaintiff contends that because he has asserted claims of deceptive and unfair practices under the UTPCPL, he need not plead his claims with particularity under Fed. R. Civ. P. 9(b). (*Id.*).  Plaintiff further contends that even if he were required to do so, he could satisfy that standard:

> Plaintiff alleges that on July 19, 2021 (when), Defendant (who) falsely represented that it had no proof of hazard/property insurance (what) despite knowing that Plaintiff had a current policy with Progressive the funds for which were in escrow and, despite its knowledge, purchased forced-place insurance with an annual premium of over four times that of Plaintiff's existing policy to self-deal in Defendant's undisclosed kickback scheme with National (how). Compl. ¶¶ 20–21, 68–94.

(Pl.'s Br. at 23).

The Court rejects Defendant's challenge to Plaintiff's UTPCPL claim at this motion-to-dismiss phase of the case.

The Court rejects Defendant's argument that Plaintiff's "kick-back" allegations are implausible because Plaintiff has made various allegations upon "information and belief."  As the Second Circuit explained in *Arista Records, LLC v. Doe 4*, 603 F.3d 110, 120 (2d Cir. 2010):

> The *Twombly* plausibility standard, which applies to all civil actions, *see Iqbal*, 129 S.Ct. at 1953, does not prevent a plaintiff from "pleading facts alleged 'upon information and belief' " where the facts are peculiarly within the possession and control of the defendant, *see, e.g., Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008), or where the belief is based on factual information that makes the inference of culpability plausible, *see Iqbal*, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

*Arista Records, LLC v. Doe 4*, 603 F.3d at 120.[3]

---

[3]It does not appear that the Sixth Circuit has rejected such an exception.  *See In re Darvocet, Darvon, and Propoxyhene Prod. Liab. Litig,*, 756 f.3d 917, 931 (6th Cir. 2014).

22

"The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).  And "the mere existence of more likely alternative explanations does not automatically entitle a defendant to dismissal." *Id.* at 505.  "Often, defendants' conduct has several plausible explanations. Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage." *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011).  "Thus, if a plaintiff's claim is plausible, the availability of other explanations – even more likely explanations – does not bar the door to discovery.*"  16630 Southfield Ltd. P'ship*, 727 F.3d at 506.

Here, there does not appear to be any dispute that Defendant has a "Master Policy" with National Fire & Marine Ins. Co. under which it obtains force-placed insurance coverage for its mortgagees.  (*See* Def.'s Ex. B, ECF No. 6-2 at PageID.257) ("Lender-Placed Insurance Evidence Of Hazard Insurance" that cites a "Master Policy No." that is blacked out.).  Plaintiff asserts that he has requested, but has not received, a copy of that "contract between Defendant and National Fire."  (Pl.'s Br. at 6).  The terms of Defendant's policy with National Fire, and what benefits Defendant receives under it for forced-placed insurance policies, is information peculiarly within Defendant's knowledge and control.

Moreover, the factual allegations in Plaintiff's Complaint that are not stated "upon information and belief" make it plausible that Defendant obtained a forced-place insurance policy for Plaintiff because it receives some type of incentive or "kick-back" to do so.  They include that: 1) Defendant obtained a forced-placed insurance policy for Plaintiff, even though

Defendant had been provided with the closing statement that reflected that Defendant had already prepaid for a full year of insurance; 2) Defendant claims to have paid National $4,450.44 for a policy that provides *substantially less coverage* than the policy Plaintiff obtained with Progressive for $981 (that is more than four times the cost of the policy obtained by Plaintiff); 3) Plaintiff contests that he received the July 19, 2021 letter; and 4) that Defendant obtained a policy that began on May 23, 2021 – a date preceding any alleged request for proof of insurance having been sent to Plaintiff by Defendant.

The Court also finds that Defendant's reliance on *Cohen* and *Feaz* is misplaced. In *Cohen*, the plaintiff asserted a consumer protection act claim against her servicer based on the allegation that the servicer was receiving kickbacks for force-placed insurance policies. The Seventh Circuit affirmed the dismissal of the plaintiff's claim under the Illinois Consumer Fraud and Deceptive Business Practices Act on a ground that was different than the ground upon which the district court dismissed that claim. The Seventh Circuit concluded that the plaintiff did not plausibly allege an "unfair" or "deceptive" act or practice within the meaning of the act because the "loan agreement and [Defendant's] disclosures, notices, and correspondence conclusively defeat any claim of fraud, false promise, concealment, or misrepresentation." *Id*. at 608. It noted that the plaintiff's "complaint characterize[d] the fee and commission to [Defendant] and its insurance affiliate as 'kickbacks'" but rejected that theory, explaining that Plaintiff "seems to think that merely applying this label converts the bank's otherwise clear disclosures into a prohibited deceptive act. Not so. The substance of the transaction was clearly and fully disclosed; no material fact was omitted." *Id.* at 609. A similar ruling was made by the Eleventh Circuit in *Feaz,* but was made as to a breach-of-fiduciary duty claim. *Feaz*, 745 F.3d at 110-11

Notably, neither of those cases involved the UTPCPL or Pennsylvania law.  Moreover, the reasoning in those decisions has been subsequently rejected by various other courts.  *See, e.g., Martorella v. Deutsch Bank Nat'l Trust Co.*, 161 F.Supp.3d 1209 (S.D. Fla. 2015); *Longest v. Green Tree Svc'g, LLC*, 74 F.Supp.3d 1289, 1297-98 (C.D. Calf. 2015); *Valdez v. Saxon Mort. Serv., Inc*., 2014 WL 7968109 at *11 (C.D. Calf. 2014); *Perryman v. Litton Loan Servicing*, 2014 WL 4954674 at * 12 (N.D. Cal. 2014); *Wilson v. EverBank, N.A.*, 77 F.Supp.3d 1202, 1217 (S.D. Fla. 2015).  "As Judge Tigar in the Northern District of California aptly stated when he rejected [Defense] counsel's argument that *Cohen* and *Feaz* required dismissal of that case, 'if this were the rule, it would grant unfettered license to mortgage services to mark-up the charges for force-placed insurance with no limit whatsoever.'" *Martorella*, 161 F.Supp.3d at 1222 (citing *Perryman, supra*).

## V.     The Court Dismisses Plaintiff's Unjust Enrichment Claim With Prejudice.

Plaintiff's Complaint also asserts, "in the alternative" to his breach-of-contract claim, an unjust enrichment claim.  (Compl. at 44).  Defendant challenges Plaintiff's unjust enrichment count, asserting that the claim fails because the same subject matter is covered by an express contract.  (Def.'s Br. at 23).  The Court agrees with Defendant that the claim should be dismissed.

"Claims for restitution and unjust enrichment sound in quasi-contract or contract implied in law." *Baxter v. PNC Bank Nat. Ass'n*, 541 F. App'x 395, 397 (5th Cir. 2013).  But "[t]here can be no recovery based on these theories when the same subject matter is covered by an express contract." *Id.* (citing *Fortune Prod. Co. v. Conoco, Inc*., 52 S.W.3d 671, 684 (Tex. 2000)).  "A party can plead legal and equitable claims in the alternative, but only when one

25

party disputes the existence of a contract governing the dispute.'" *Johnson v. Wells Fargo Bank, NA*, 999 F.Supp.2d 919, 929 (N.D. Tex. 2014) (citations omitted).

Here, there is no dispute that the Deed of Trust is a valid and enforceable contract between the parties (*see, e.g.*, Compl. at ¶ 111 & Pl.'s Br. at 20; Def.'s Br. at 23) and that contract governs the subject of force-placed insurance.  As such, the Court dismisses Plaintiff's unjust enrichment claim.  *See, eg.*, *Cardin v. Newrez, LLC*, 2022 WL 16540183 at *4-5 (N.D. Ill. 2022) (Same result under Illinois law).

## VI.    The Court Declines Defendant's Premature Request To "Dismiss Class Claims."

Again, Plaintiff Apodaca is the only named Plaintiff in this putative class action.  At this juncture, no motion for class certification has been filed and the matter is before the Court on Defendant Newrez's Motion to Dismiss Plaintiff Apodaca's claims under Fed. R. Civ. P. 12(b)(6).

Nevertheless, Defendant's Motion to Dismiss asks this Court to "dismiss the class claims."  The Court declines to do so.  Such a request is premature as the issue of class certification is not before the Court.  *See, eg., Cardin, supra*, at *10 (dismissing request to dismiss or strike "class claims" are premature).

## VII.   The Court Rejects Defendant's Argument That Plaintiff's Claims Are Properly Within The Jurisdiction Of The *Chong* Litigation.

Defendant's motion and briefs matter a smattering of references to a class action case that was filed in United States District Court for the Southern District of Florida ("the *Chong* Litigation").  Defendant asserts that any claim Plaintiff has against it in this case is "properly within the jurisdiction of the court in the *Chong* Litigation" because there is an injunction in that case that prohibits certain conduct.  (*See, e.g.*, Def.'s Br. at 14).

26

In response, Plaintiff asserts that the "proceedings in *Chong v. Shellpoint*, Case No. 1:18-cv-80948-RLR (S.D. Fla.)" do not affect this matter. Plaintiff asserts that, among other things, he is "not a class member in *Chong*, which was limited to transactions from March 1, 2014 to April 4, 2019, while Plaintiff's dealings were in 2021." (Pl.'s Br. at 6).

The Court rejects Defendant's argument as to the *Chong* Litigation because Defendant has not established the Plaintiff is a class member in that case.

## CONCLUSION & ORDER

For the reasons above, IT IS ORDERED that Defendant's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED to the extent that the Court DISMISSES Plaintiff's breach of implied covenant of good faith and fair dealing claim, his claim under Michigan's Consumer Protection Act, and his unjust enrichment claim. The motion is DENIED in all other respects.

This Court's rulings mean that only the following claims remain in this putative class action: 1) Plaintiff's breach of contract claim (under Texas law); and 2) his claim under Pennsylvania's Consumer Protection Act. Plaintiff is a Texas citizen who obtained a mortgage on his home in Texas. Defendant Newrez is a Delaware limited liability company that is headquartered in Pennsylvania. As the Court noted at the March 2, 2023 hearing, given these circumstances, it appears that this Court should transfer this Court to the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. § 1404(a). Section 1404(a) "does not require a motion; a district court may transfer a case sua sponte." *Carver v. Knox Cnty., Tennessee*, 887 F.2d 1287, 1291 (6th Cir. 1989). Nevertheless, the Court will allow the parties the opportunity to be heard before taking such action. The Court **ORDER**S that, no later than

27

**March 24, 2023**, each party shall file a brief of no more than twenty (20) pages that addresses this issue. If they wish to do so, no later than **April 7, 2023**, each party may respond to the brief filed by the opposing party, in a brief not to exceed ten (10) pages.

      IT IS SO ORDERED.

                                  s/Sean F. Cox
                                  Sean F. Cox
                                  United States District Judge

Dated:  March 10, 2023